IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE J.M SMUCKER COMPANY, | ) | CASE NO. 5:19CV1646 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **DEFENDANT EUROFINS** |
| | ) | **SCIENTIFIC, INC.'S MOTION TO** |
| EUROFINS SCIENTIFIC, INC., | ) | **DISMISS OR TRANSFER** |
| | ) | |
| DEFENDANT. | ) | |

Now comes Defendant, Eurofins Scientific, Inc. ("Eurofins" or "Defendant"), by and through its undersigned attorneys, and pursuant to Fed. R. Civ. P. 12(b)(6), the doctrine of *forum non conveniens*, *see Atlantic Marine Constr. Co. v U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013), and/or 28 U.S.C § 1404(a), hereby moves to dismiss or transfer the Complaint filed by Plaintiff The J.M. Smucker Company ("Smucker" or "Plaintiff") for the reasons more fully set forth in the supporting memorandum filed contemporaneously herewith and incorporated herein by reference.

Specifically, Plaintiff filed a Complaint against Defendant in this Court, purporting to state claims for breach of contract, breach of warranties, and negligence arising from Defendant's provision of food testing services to Smucker. However, as set forth in the memorandum in support, this action must be dismissed or transferred as the contract between Eurofins and Smucker contains a valid and enforceable forum selection clause that mandates venue exclusively in the state or federal courts located in or having jurisdiction over Polk County, Iowa.

Wherefore, Defendant respectfully requests that the Court dismiss this action in its entirety pursuant to Rule 12(b)(6) and/or the doctrine of *forum non conveniens*, or in the alternative, that

the Court transfer this action to the United States District Court for the Southern District of Iowa

pursuant to 28 U.S.C § 1404(a), and for such other relief as the Court deems just and proper.

Respectfully submitted,

/s/Jessica L. MacKeigan
Richard T. Coyne (0042405)
Jessica L. MacKeigan (0087121)
WEGMAN HESSLER LPA
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826
E-Mail: rtcoyne@wegmanlaw.com
jlmackeigan@wegmanlaw.com
*Attorneys for Defendant Eurofins Scientific Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ..................................... 1

I. FACTUAL BACKGROUND ................................................................................... 2

    A.    The EOL Agreement and ESI Standard Terms ............................................. 2

    B.    Smucker's Orders and Claims ........................................................................ 5

    C.    The Forum Selection Clause .......................................................................... 7

II. STANDARD OF REVIEW ...................................................................................... 8

III. ARGUMENT ......................................................................................................... 10

    A.    The Eurofins Forum Selection Clause is Part of the Parties' Agreement. .... 10

    B.    The Eurofins Forum Selection Clause is Enforceable .................................. 13

    C.    The Forum Selection Clause Applies to the Claims Asserted in the
Complaint .............................................................................................................. 16

    D.    The Eurofins Forum Selection Clause is Mandatory .................................... 18

    E.    Based on the Forum Selection Clause, the Complaint Should be Dismissed
Under the Doctrine of *Forum Non Conveniens*, or Alternatively, Transferred Pursuant to
28 U.S.C § 1404(a) ............................................................................................... 19

    IV. CONCLUSION .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atlantic Marine Constr. Co. v U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013) ................................................................................................ i

*Boling v. Prospect Funding Holdings, LLC*, No. 18-5599, 771 F. App'x 562 (6th Cir. Apr. 25, 2019) .................................................................................................................................. 10

*Braman v. Quizno's Franchise Co., LLC*, No. 5:07CV2001, 2008 WL 611607 (N.D. Ohio Feb. 20, 2008) (Lioi, J.) ............................................................................................................. 14

*Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567 (6th Cir. 1999) ............................................. 11

*Ferris & Salter P.C. v. Thomson Reuters Corp.*, 819 F. Supp. 2d 667 (E.D. Mich. 2011) .......... 16

*Florida St. Bd. of Admin. v. Law Eng'g & Env. Serv., Inc.*, 262 F. Supp. 2d 1004 (D. Minn. 2003) ........................................................................................................................................ 20

*Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 (6th Cir. 1994) .......................... 19

*Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192 (Ohio App. 2003) ............................................ 15

*Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E. 2d 987 (Ohio 1993) ............................................................................................................................ 14

*Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365 (6th Cir. 2008) .......................... 11

*Magi XXI, Inc. v. Stato della Cittá del Vaticano*, 714 F.3d 714 (2d Cir. 2013) .......................... 18

*Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*, No. 5:15-CV-1310, 2016 WL 705261 (N.D. Ohio Feb. 23, 2016) (Lioi, J.) ....................................................... 12

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) .................... 10

*PolyOne Corp. v. Teknor Apex Co.*, No. 1:14CV0078, 2014 WL 4207671 (N.D. Ohio Aug. 25, 2014) ...................................................................................................................................... 18

*Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 719 (6th Cir. 2006) ................. 14

*Ricketts v. hybris AG*, No. 1:15 CV 277, 2015 WL 13679481 (N.D. Ohio June 19, 2015) .......... 18

*Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922 (6th Cir. 2014), *cert. denied*, 136 S. Ct. 791 (2016) ...................................................................................................................................... 8

*State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd.*, No. 5:11CV316, 2012 WL 169960 (N.D. Ohio Jan. 18, 2012) ..................................................................................................... 11

*Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997)...........................................18

*Tocci v. Antioch University*, 967 F. Supp. 2d 1176 (S.D. Ohio 2013)..........................................11

*Villanueva v. Barcroft*, 822 F. Supp. 2d 726 (N.D. Ohio 2011)....................................................10

*Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009).........................................................9

*Yoak v. Assurance Grp., Inc.*, No. 5:17-CV-1094, 2017 WL 4155770 (N.D. Ohio Sept. 19, 2017) (Lioi, J.) ...............................................................................................................................8

**Rules**
Rule 12(b)(6) ....................................................................................................................16

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Eurofins Scientific Inc. is a member of an international group of affiliated laboratories providing a range of testing and support services to the food and consumer product industries, among others, including nutritional analysis and testing of pet food and feed.  (Declaration of Sean Murray ("Murray Decl."), attached hereto as Exhibit 1 and incorporated by reference herein,[1] at ¶ 2; *see also* Complaint, Doc #: 1, PageID #: 3, ¶¶ 9-10.)  Smucker and its family of brands manufacture a wide variety of food and beverage products, including 9Lives® brand cat food.  (*Id*. at PageID #: 2, ¶¶ 5-6.)

In November 2016, Smucker entered into a contract with Eurofins relative to certain pet food testing and Smucker's use of Eurofins' online service, Eurofins On-Line ("EOL"), providing 24/7 access to its laboratories, including online order / sample registration and tracking and archival storage of analysis results and test reports among other features.  (Murray Decl. at ¶ 3.)  Specifically, on or about November 22, 2016, Smucker affirmatively acknowledged and accepted the EOL account terms and conditions outlined in the Eurofins On-Line Agreement ("EOL Agreement").  (*Id*. at ¶ 4 and Exhibits A and B thereto.)  The EOL Agreement expressly incorporates the "most recent version of the ESI [Eurofins Scientific Inc.] Standard Terms and Conditions," available at www.eurofinsus.com ("ESI Standard Terms").  (*Id*. at ¶ 5 and Exhibit A thereto at Article 7.)  Pursuant to the terms of these agreements, Smucker has regularly submitted orders and requests for service to Eurofins through the EOL over the course of the last three years.  (*Id*. at ¶ 6; see also Complaint, Doc #: 1 at PageID #: 3 at ¶¶ 11-12; id. at PageID #: 5 at ¶ 21.)

---

[1] "Where a party challenges either venue or jurisdiction, the court may consider matters outside the pleadings and 'is empowered to resolve factual disputes.'" *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod.*, Inc., No. 5:15-CV-1310, 2016 WL 705261, at *2 (N.D. Ohio Feb. 23, 2016) (Lioi, J.) (quoting *Tenn. Imp., Inc. v. Filippi*, 745 F. Supp. 1314, 1320 (M.D. Tenn. 1990) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986))).

On or about November 19, 2018, Smucker accessed the EOL and through that website, placed an order for testing related to Smucker's 9Lives® Protein Plus® wet cat food (the "Cat Food"). (Complaint, Doc# 1, PageID #: 2, 4-5 at ¶¶ 6, 14, 21; Murray Decl. at ¶ 7.) Thereafter, on or about December 1, 2018, Smucker sent samples of the Cat Food to Eurofins. (Complaint, Doc# 1, PageID #: 6 at ¶¶ 27-28; Murray Decl. at ¶ 8.) The testing order at issue was submitted and accepted subject to the terms of the EOL Agreement, including the most recent version of the ESI Standard Terms adopted effective October 26, 2018 and expressly incorporated in the EOL Agreement. (Murray Decl. ¶ 9 and Exhibits A and C thereto; *see also,* Complaint, Doc# 1, PageID #: 5 at ¶¶ 22-24 and Exhibits C and D thereto, Doc #s: 1-4 and 1-5).

The EOL Agreement and October 2018 ESI Standard Terms were part of the parties' contract, including a forum selection clause requiring all disputes arising out of the agreement be brought exclusively in a court located in and having jurisdiction over Polk County, Iowa. (Murray Decl. at ¶ 10 and Exhibit A thereto at Article 6 and Exhibit C thereto at ¶ 14.) Those forum selection clauses are the basis for this Motion to dismiss or transfer this action.

## I.      FACTUAL BACKGROUND

### A.  The EOL Agreement and ESI Standard Terms

On November 22, 2016, Smucker, through its agent Brian Fitchett, affirmatively accepted and entered into the EOL Agreement with Eurofins. (Murray Decl. ¶ 4 and Exhibits A and B thereto; *see also* Complaint, Doc# 1, Page ID#: 5 at ¶ 22 and Exhibit C thereto, Doc #: 1-4). The initial term of the EOL Agreement was for one year and it has automatically renewed for successive one-year terms thereafter. (*Id.* at PageID #: 43; *see also* Murray Decl. at ¶ 11 and Exhibit A thereto at Article 2.) The EOL Agreement applies to Smucker's access and use of the EOL, including the submission of orders and data by Smucker to Eurofins and the analytical test

results and other data generated by Eurofins for Smucker based on the services requested by Smucker.  (*Id*. at ¶¶ 5, 9 and Exhibit A thereto at Article 1.)

The EOL Agreement expressly incorporates the ESI Standard Terms.  Specifically, Article 7 of the EOL Agreement provides that, "The most recent version of the ESI Standard Terms and Conditions is applicable to all activities described herein and is available at www.eurofinsus.com." (*Id*. at Article 7; Complaint, Doc# 1, PageID #: 5 at ¶¶ 22-23 and Exhibits C and D thereto, Doc #s: 1-4 and 1-5).  At the time of Smucker's acceptance of the EOL Agreement on November 22, 2016, the most recent ESI Standard Terms were those adopted effective December 2009, which remained unchanged until March 2018, when the terms were revised to specifically identify each Eurofins affiliate, or member, laboratory.  (Murray Decl. at ¶ 12 and Exhibits D ("2009 ESI Standard Terms") and Exhibit E ("March 2018 Standard Terms") thereto.)  Otherwise, the ESI standard terms and conditions remained virtually the same between December 2009 and October 2018.  (*Id*.)

Pursuant to each iteration of the ESI Standard Terms, Smucker agreed that ESI's standard terms and conditions applied to all orders accepted by Eurofins and that a contract with those terms "comes in to being" whenever an order has been placed with and accepted by Eurofins.  (Murray Decl. at ¶ 13 and compare Exhibits C, D, and E thereto at ¶ 1.1 respectively.)  In Paragraph 1.2 of the December 2009 ESI Standard Terms, Smucker agreed that:

> These Terms and Conditions supersede and replace all prior verbal or written price quotations and agreements between the parties and, unless specifically indicated otherwise therein, take precedence over all conflicting or inconsistent provisions of subsequent written agreements between the parties. No officer (other than the Chief Executive Officer of ES), employee, agent or subcontractor of ES has the authority to alter or waive any of these Terms and Conditions or to make any representation which conflicts with or purports to override any of these Terms and Conditions; and no such alteration, waiver or representation shall be binding upon ES, unless it is in writing and signed by the Chief Executive Officer of ES.

(*Id.* at ¶ 14 and Exhibit D thereto at ¶ 1.2.)  Similarly, the March and October 2018 ESI Standard Terms included a substantively identical integration clause, stating that the ESI standard terms and conditions could only be modified, altered, or waived in a writing signed by an "authorized officer of the Member."  (*Id.* at ¶ 15 and Exhibits C and E thereto at ¶ 1.2 respectively; *see also* Exhibit D to the Complaint, Doc #: 1-5 at PageID #: 46.)

Moreover, in each version of the ESI Standard Terms, Smucker agreed that "unless specifically accepted in a writing and signed" by an authorized officer of Eurofins:

> any terms proposed or submitted [by Smucker] at any time (including, but not limited to, terms or provisions in [a Smucker's] purchase order, instructions or other document) which differ from [the Eurofins Terms] are rejected as a material alteration of [the Eurofins Terms] and shall be of no force or effect. .... Each order accepted by [Eurofins] will be treated as a separate contract between [Eurofins] and [Smucker].

(*Id.* at PageID #: 47; Murray Decl. at ¶ 16 and Exhibits C, D, and E thereto at ¶ 1.2 respectively.)

Notably, the foregoing terms are substantively the same to those in Eurofins' earlier 2014 contract with Big Heart Pet Brands, the former producer and distributor of 9Lives® wet cat food, that Smucker acquired in 2015[2] and whose Eurofins account numbers Smucker continues to use to conduct business with Eurofins to this day.  (*Id.* at ¶¶ 17-18 and Exhibit F thereto.)  Specifically, on or about October 21, 2014 and under the signature of Matthew Hall, Manager – Corporate Quality Assurance, Big Heart Pet Brands submitted a New Account Application to Eurofins Analytical Laboratories, Inc. and agreed to Eurofins' General Terms and Conditions of Sale, which are nearly identical to the ESI Standard Terms at issue in this case and applied to all orders, took

---

[2] In or around March 2015, Smucker acquired Big Heart Pet Brands, a producer, distributor, and marketer of pet food and pet snacks, including 9Lives®, and Eurofins customer.  (Murray Decl. at ¶¶ 17-18 and Exhibit F thereto, Smucker Press Release.)  Following the acquisition, Smucker continued doing business with Eurofins as Smucker / Big Heart Pet Brands and using the same account numbers and EOL login credentials.  (*Id.* at ¶¶ 17-18.)

precedence over subsequent proposed terms, and could not be modified by the customer's purchase orders. (*Id.*)

**B. Smucker's Orders and Claims**

On May 10, 2018, Smucker purportedly submitted a purchase order to Eurofins for the purchase of various food and feed testing, including cat food testing ("Purchase Order"), purportedly followed by a series of alleged change orders supposedly relating back to its original purchase order. (Complaint, Doc#:1, PageID #: 3 at ¶¶ 11-13, and Exhibit B thereto.) Thereafter, Smucker alleges it submitted a series of orders to Eurofins through the EOL on November 19, 2018, January 16, 2019, and February 12, 2019. (Complaint, Doc#:1, PageID #: 3-5 at ¶¶ 14-17, 21.) A copy of the May 2018 Purchase Order was not attached to Plaintiff's Complaint and, to date, Eurofins has been unable to identify or locate any such purchase order or change order despite an exhaustive search of Eurofins' records. (Murray Decl. at ¶ 19.)

Each online testing request submitted by Smucker to Eurofins through EOL, was submitted under the Big Heart Pet Brands Account. (Murray Decl. at ¶ 20.) These orders were directed to Eurofins Scientific Inc.'s Des Moines, Iowa office. (Murray Decl. at ¶ 20.) The November 2018 online testing request at issue in this case, was submitted to Eurofins through EOL and related to thiamine (Vitamin B1) testing of Smucker's Cat Food. (Complaint, Doc #: 1, PageID #: 4 at ¶¶ 14, 17).

On or around, December 1, 2018, Eurofins received the Cat Food samples sent by Smucker to Eurofins for thiamine testing. (*Id.* at PageID #: 6 at ¶ 27; Murray Decl. ¶8.) Eurofins tested the samples pursuant to regularly accepted industry standards and practices, at a nominal testing cost, and reported the results to Smucker. (Murray Decl. at ¶ 21.) The thiamine testing results

indicated low levels of thiamine, which did not meet minimum requirements.[3]  (*Id.*; *see also* Complaint, Doc #: 1, PageID #: 6 at ¶ 28.)

Smucker did not attempt to verify the test result or request an investigation to confirm or validate the results.  (Murray Decl. at ¶ 21.)  Instead, Smucker alleges that as a result of receiving this test report, it immediately filed a report with the FDA Reportable Food Registry and commenced a voluntary recall of the Cat Food.  (Complaint, Doc #: 1, PageID #: 6 at ¶¶ 31-32.) Smucker alleges that as a result of the recall, its customers had to remove the Cat Food from shelves and dispose of it and thereafter submitted deductions for these costs to Smucker.  (*Id.* at PageID #: 7 at ¶ 33.)

At some point, Smucker investigated further and allegedly sent samples of the Cat Food to two other independent laboratories for thiamine testing.  (*Id.* at ¶ 34.)  Those laboratories allegedly reported that the Cat Food actually contained sufficient levels of thiamine.  (*Id.*)  According to Smucker, the subsequent testing showed that Eurofins had incorrectly performed its testing and incorrectly reported that the Cat Food had low thiamine, resulting in an unnecessary recall.  (*Id.* at ¶¶ 35, 37-38.)

---

[3] Per Smucker's voluntary recall notice:

> Cats fed diets low in thiamine for ***several weeks*** may be at risk for developing a thiamine deficiency. Thiamine is essential for cats. Symptoms of deficiency displayed by an affected cat can be gastrointestinal or neurological in nature. Early signs of thiamine deficiency may include decreased appetite, salivation, vomiting, and weight loss. In advanced cases, neurological signs can develop, which include ventroflexion (bending towards the floor) of the neck, wobbly walking, circling, falling, and seizures. Contact your veterinarian immediately if your cat is displaying any of these symptoms. ***If treated promptly, thiamine deficiency is typically reversible***.

*See* U.S. Food and Drug Administration, Company Announcement, "The J.M. Smucker Company Issues Voluntary Recall of Specific Lots of 9Lives® Protein Plus® Wet, Canned Cat Food Due to Low Levels of Thiamine (Vitamin B1)," *available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/jm-smucker-company-issues-voluntary-recall-specific-lots-9livesr-protein-plusr-wet-canned-cat-food (last visited on Nov. 27, 2019) (emphasis added).

This lawsuit followed.  In its Complaint, Smucker alleges that Eurofins breached its contractual obligations and warranties under the Smucker's general terms and conditions, or alternatively, under the EOL Agreement and October 2018 ESI Standard Terms, and that it is entitled to indemnity from Eurofins with respect to the losses it allegedly incurred as a result of the recall. (*Id*. at ¶¶ 35, 37-39.)  Smucker's Complaint asserts claims for breach of contract, breach of express warranties, gross negligence and negligence.

### C.  The Forum Selection Clause

The Smucker Cat Food testing order at issue was submitted to Eurofins via EOL by Smucker under the Big Heart Pet Brands Account Code AUS004640, which is the same account Smucker used when it confirmed its acceptance of the EOL Agreement and the ESI Standard Terms.  (Murray Decl. at ¶ 22.)  Thus, the order at issue was subject to the terms of the EOL Agreement and the most recent ESI Standard Terms in effect at that time, the October 2018 ESI Standard Terms, including the forum selection clause therein.

Specifically, in the EOL Agreement, the parties agreed to resolve any dispute "in the courts of the State of Iowa, County of Polk, or if it has or can acquire jurisdiction, in the United States District Court for the Southern District of Iowa…"  (*Id*. at ¶ 23 and Exhibit A thereto at Article 6 – Governing Law and Jurisdiction; *see also* Exhibit C to the Complaint, Doc #: 1-4 at PageID #: 44.)  Likewise, pursuant to the October 2018 ESI Standard Terms incorporated by reference in the EOL Agreement, the parties agreed to resolve any dispute in "the commercial courts of the State in which the registered office of the Member which accepted the order in question is located." (Murray Decl. at ¶ 23 and Exhibits C thereto at ¶ 14; *see also* Exhibit D to the Complaint, Doc #: 1-5 at PageID #: 51.)  In this case, the subject Cat Food samples were received in December 2018 by "Member," Eurofins Scientific Inc., which is headquartered in Des Moines, Polk County, Iowa.

7

(Murray Decl. at ¶ 23 and Exhibit A thereto at preamble and Exhibit C thereto at ¶ 1.1.)  The Eurofins forum selection clauses are part of the parties' contract and apply to Plaintiff's claims.

## II.    STANDARD OF REVIEW

"The Sixth Circuit has implicitly endorsed Rule 12(b)(6) as a proper vehicle upon which to dismiss a case where a defendant seeks to enforce a forum selection clause." *Yoak v. Assurance Grp., Inc.*, No. 5:17-CV-1094, 2017 WL 4155770, at *2 (N.D. Ohio Sept. 19, 2017) (Lioi, J.) (quoting *C. Thorrez Indus., Inc. v. LuK Transmissions Sys., LLC*, No. 5:09–cv–01986, 2010 WL 1434326, at *3 (N.D. Ohio April 8, 2010) (citing *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008))).  *See also Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 933 (6th Cir. 2014), *cert. denied*, 136 S. Ct. 791 (2016) (holding district court did not abuse its discretion by dismissing an action under Rule 12(b)(6) instead of transferring it, where only dismissal has been sought).

The Sixth Circuit recently summarized the legal standard applicable to a motion to dismiss for *forum non conveniens* or for transfer under 28 U.S.C. § 1404(a), as follows:

> Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  A district court ruling on a motion to transfer under 28 U.S.C. § 1404(a) should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses," public-interest concerns, as well as whether the transfer is in the interests of justice.  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  This provision is "a mechanism for enforcement of forum-selection clauses that point to a particular federal district."  [*Atl. Marine Constr. Co. v U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59, 134 S.Ct. 568 (2013)].
>
> If, however, a forum-selection clause indicates that a matter should be heard by a state or foreign court, then *forum non conveniens* is the appropriate method of enforcement.  *Id.* at 60–61, 134 S.Ct. 568.  *Forum non conveniens* permits a court to decline to exercise jurisdiction even when jurisdiction is proper.  *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016).  Section 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has

replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine*, 571 U.S. at 60, 134 S.Ct. 568. Because both § 1404(a) and *forum non conveniens*" entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61, 134 S.Ct. 568.

Courts should uphold a forum-selection clause unless there is a strong showing that the clause should be set aside. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Federal law governs the enforceability of a forum-selection clause in a diversity suit. *Ibid.* To evaluate whether a forum-selection clause is enforceable, a court must consider: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Ibid.* The party who opposes the enforcement of the forum-selection clause has the burden of showing that the clause should not be enforced. *Ibid.* A valid forum-selection clause will have "controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 60, 134 S.Ct. 568 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring)).

… A typical *forum non conveniens* analysis involves three steps. *Hefferan*, 828 F.3d at 492. First, the court determines the degree of deference owed the plaintiff's forum choice. The defendant must then establish an "adequate alternative forum" and show that "the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Ibid.* **In *Atlantic Marine*, the Supreme Court concluded that an enforceable forum-selection clause alters this analysis in three important ways. 571 U.S. at 63, 134 S.Ct. 568. First, the plaintiff's choice of forum no longer receives any weight. Instead, the plaintiff must show why the court should not transfer the case to the selected forum. *Ibid.* Second, the court should only consider arguments about public-interest factors,[4] and not the parties' private interests.[7] *Id.* at 64, 134 S.Ct. 568. Public-interest factors, the Court observed, will "rarely defeat a transfer motion," and thus the "practical result" is that forum-selection clauses will almost always control. *Ibid.* Third, when a party bound by a forum-selection clause files suit in a different forum, the transfer of venue will *not* carry the original venue's choice-of-law rules. *Ibid.***

---

[4] Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

9

*Boling v. Prospect Funding Holdings, LLC*, No. 18-5599, 771 F. App'x 562, 567–68 (6th Cir. Apr. 25, 2019) (emphasis added).

Regardless of whether this motion is resolved by dismissal or transfer, resolution depends upon "(1) whether there is a valid and enforceable forum selection clause governing the location of the court adjudicating the dispute and (2) whether the clause is applicable to the matter at hand." *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 733 (N.D. Ohio 2011). As the answer to both of these questions is yes, and because Smucker cannot meet its high burden of showing that the Eurofins forum selection clause should not be enforced, the Court should grant this Motion.

## III.  ARGUMENT

The EOL Agreement and the ESI Standard Terms are part of the parties' agreement and, in particular, the forum selection clause therein applies and requires dismissal or transfer to Iowa.

### A.  The Eurofins Forum Selection Clause is Part of the Parties' Agreement.

"In order to prove the existence of a contract, a plaintiff is required to demonstrate the essential requirements of an offer, acceptance, and consideration." *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citing *Helle v. Landmark, Inc.*, 472 N.E.2d 765, 773 (Ohio Ct. App. 1984)). "A valid and binding contract comes into existence when an offer is accepted." *Id*. (citing *Realty Dev., Inc. v. Kosydar*, 322 N.E.2d 328, 332 (Ohio Ct. App. 1974)).[5] In determining whether parties to a contract reached mutual assent, Ohio law is "only interested in objective manifestations of intent." *Tocci v. Antioch University*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) (citations to Ohio state court cases omitted).

---

[5] A federal court sitting in diversity generally applies the substantive law of the forum state. *State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd.*, No. 5:11CV316, 2012 WL 169960, at *2 (N.D. Ohio Jan. 18, 2012) (citation omitted); *see also Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008) (citation omitted) (the law of the state in which a suit is filed "governs the initial question of whether the agreements containing the forum selection clauses were valid").

In this case, Smucker's agent expressly acknowledged and accepted the EOL Agreement in November 2016, which incorporated the most recent version of the ESI Standard Terms and Conditions found at "www.eurofinsus.com."  All Smucker needed to do to view the ESI standard terms and conditions at that time, or any time thereafter, was to view the terms on Eurofins' website through the link provided or ask for a copy.  "Several courts have applied traditional contract law to find terms and conditions located on a company's website to be incorporated into a contract where they were clearly referred to and could be easily located by the challenging party, especially where that party is a commercial entity." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*, No. 5:15-CV-1310, 2016 WL 705261, at *5 and fn. 9 (N.D. Ohio Feb. 23, 2016) (Lioi, J.) (citing *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing cases); *Discount Drug Mart, Inc. v. Devos, Ltd.*, No. 1:12 CV 00386, 2013 WL 5820044, at *2 (N.D. Ohio Oct. 29, 2013) ("[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.") (quotation marks and citations omitted))).

According to Smucker, however, its alleged "original Purchase Order" and each subsequent "change order" incorporated the Smucker's Terms and Conditions, located at www.smuckersupplier.com ("Smucker Terms"), including a forum selection clause pointing to Cuyahoga County, Ohio.  (Complaint, Doc #: 1-1 at ¶¶ 4, 17 and Exhibit A thereto, Doc #: 1-2, PageID #: 35 at ¶ 17.)  However, despite an exhaustive search of its records, Eurofins has been unable to identify or locate any such purchase order or change orders.  Regardless, it is undisputed each of Smucker's online testing requests were submitted through the EOL and none of those requests reflected any objections to the EOL Agreement or the ESI Standard Terms originally

11

accepted by Smucker in November 2016 and applicable to each such order. (Murray Decl. at ¶ 24; *see also* Exhibit B to the Complaint, Doc #: 1-3.)

Moreover, even if Eurofins had received the alleged purchase order and subsequent change orders, in accepting the EOL Agreement and the ESI Standard Terms, Smucker agreed that each order that Eurofins accepted from Smucker, created a "separate independent contract" between the parties, subject to the ESI standard terms and conditions. Thus, the November 2018 order stands alone and Smucker's reliance on the terms purportedly incorporated in its "original" purchase order and an alleged unbroken line of superseding "change orders" is misplaced.

Further, Smucker also explicitly agreed the ESI Standard Terms could not be altered, waived or modified by any subsequent purchase order or other document without Eurofins' signed, written consent to such additional or modified terms, and that Eurofins specifically rejected such terms as a "material alteration" of its standard terms and conditions. (Murray Decl. at ¶¶ 13-16 and Exhibits C, D, and E thereto at ¶ 2.2 respectively; *see also* Exhibit D to the Complaint, Doc #: 1-5 at PageID #: 47.) Importantly, Smucker's agreement to this language predates the alleged purchase order and each of the alleged change orders at issue in this case and precludes Smucker from relying upon its own general terms and conditions, including Paragraph 2 therein, within which Smucker attempted to object to and reject any *subsequent* inconsistent or additional Eurofins' terms. (*See* Complaint, Doc #: 1, PageID #: 5 at ¶ 20 and Exhibit A thereto, Doc #: 1-2, PageID #: 30 at ¶ 2.) In any event, it is undisputed that no authorized Eurofins officer specifically accepted in writing, or otherwise affirmatively acknowledged, the Smucker Terms allegedly incorporated in its "purchase order" and "change orders" at issue in this litigation as required under the ESI Standard Terms. (Murray Decl. at ¶ 25 and Exhibits C, D, and E thereto.)

In short, Smucker never submitted the alleged purchase order or change orders, nor sought a written amendment to the parties' EOL Agreement and the ESI Standard Terms and, therefore, its attempt to modify these terms or the Eurofins forum selection clause by an alleged, subsequent purchase order or change order fails absolutely.

### B. The Eurofins Forum Selection Clause is Enforceable

A forum selection clause is presumed to be valid and enforceable unless "(1) it was obtained by fraud, duress, abuse of economic power, or other unconscionable means; (2) the chosen forum would be closed to the suit or would not handle it effectively or fairly; or (3) the transferee forum would be so seriously inconvenient that to require the plaintiff to bring suit there would be unjust." *See Braman v. Quizno's Franchise Co., LLC*, No. 5:07CV2001, 2008 WL 611607, at *3 (N.D. Ohio Feb. 20, 2008) (Lioi, J.) (internal citations omitted). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828 (citation omitted). Generally, it is clear that "[a] forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable." *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 719, 721 (6th Cir. 2006) (citing *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E. 2d 987, 988 (Ohio 1993)). Plaintiff cannot reasonably dispute the validity and/or enforceability of the Eurofins' forum selection clause.

There is no allegation or evidence in this case that Eurofins obtained Smucker's consent to the EOL Agreement and the Eurofins Terms the forum selection clauses therein through fraud, overreaching, duress, abuse of economic power, or unconscionable means.[6] In fact, there is no

---

[6] Even if Eurofins engaged in some fraud against Smucker – which of course it did not – Smucker would need to show specifically that the fraud induced Smucker to agree to the inclusion of the forum selection clause in the contract to avoid its application. *Preferred Capital*, 453 F.3d at 722 (quoting *Moses v. Bus. Card Express*, 929 F.2d 1131, 1138 (6th Cir. 1991)).

dispute that the agreement was reached by two sophisticated business entities in an arm's length commercial transaction.  *See, e.g.*, *Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192, 1195 (Ohio App. 2003) (cited favorably by *Preferred Capital*, 453 F.3d at 721, for proposition that for-profit business entities form commercial contracts); *see also Preferred Capital*, 453 F.3d at 721 ("[s]uch clauses are prima facie valid in the commercial context, so long as the clause has been freely bargained for").  Thus, the Eurofins forum selection clause may be enforced.  *See, e.g.*, *Kennecorp*, 610 N.E.2d at 989 ("absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable").

Nor is there any reason to believe that the Eurofins' forum selection clause is "unreasonable or unjust."  There can be no dispute that the Iowa courts present an adequate alternative forum. "[A] forum will generally be deemed adequate if the defendant is amenable to process."  *Wong*, 589 F.3d at 831.  And, there is no dispute that Eurofins is amenable to process in Iowa where it is headquartered.  Further, litigating in Iowa would not seriously inconvenience Smucker, who distributes, markets, and sells its products nationwide.  Indeed, district courts have found that parties opposing enforcement of forum-selection clauses have failed to show that the chosen jurisdiction is exceedingly more inconvenient than the circumstances presented here.  *See, e.g.*, *Ferris & Salter P.C. v. Thomson Reuters Corp.*, 819 F. Supp. 2d 667, 668, 671-72 (E.D. Mich. 2011) (enforcing forum-selection clause in which Canadian corporation with principal place of business in New York and Michigan law firm agreed to resolve disputes in Minnesota).  In any event, as Plaintiff contractually agreed to litigate in Iowa, any inconvenience was clearly foreseeable at the time of contracting.  *Atl. Marine*, 571 US. at 64.

Moreover, consideration of the public interest factors weighs in favor of adjudication in Iowa.  The public factors bearing on the question included the administrative difficulties flowing

from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6 (internal quotation marks and citations omitted.

There can be no suggestion of court congestion in Iowa courts. Further, the courts of Iowa are well equipped to handle this matter effectively and fairly and would undoubtedly have an interest in adjudicating this litigation involving a company headquartered in Iowa. Indeed, they may be in a better position to adjudicate the present dispute involving state law claims arising out of events taking place primarily in Iowa and subject to a choice-of-law provision calling for the application of Iowa law. And, to the extent that Smucker purports to bring its claims under Ohio law, the Iowa courts are just as capable of deciding any such choice of law issues.

In fact, there is no compelling local interest in having essentially a breach of contract and warranty action decided in Ohio, as the parties, two sophisticated business entities, agreed to try any dispute in Iowa. Although the courts give some weight to Plaintiff's choice of forum, that weight is overcome by the public's interest in having a forum that is at home with the law. As Iowa law governs the instant dispute, the public interest is served by having the matter litigated in Iowa. A choice-of-law provision will usually be given effect unless it would be contrary to a fundamental policy of a state with a materially greater interest in the issue. *Wong*, 589 F.3d at 832. There can been no suggestion that Ohio has a fundamental policy with a materially greater interest in a garden variety breach of contract or breach of warranty action. Thus, this is not one of the "unusual cases" in which the public interest factors are strong enough to defeat the parties' pre-selection of an alternative forum. *Atl. Marine*, 571 U.S. at 63.

Accordingly, Plaintiff cannot overcome the presumption that the Eurofins' forum-selection clause is enforceable and should control. Eurofins has its home office, all of its business records, most of its officers and most of the relevant witnesses located in and around Polk County, Iowa. (Murray Decl. at ¶ 2.) As such, there is a significant interest of Eurofins that is protected and embodied of the subject forum selection clause in the parties' agreement. Under these facts, enforcing the bargained-for terms of the agreement, including its mandatory forum-selection clause, "protects the[] legitimate expectations" of the parties to this action "and furthers vital interests of the justice system." *See Atl. Marine*, 571 U.S. at 63 (citation omitted). And, there are no unusual or unique public-interest factors present in this action that would overcome application of the *forum non conveniens* doctrine. *Id*. Because the Plaintiff cannot meet its "'heavy burden' of showing that enforcing [the] forum selection clause would be unjust or unreasonable[,]" Eurofins' Motion should be granted and the Complaint should be dismissed pursuant to Rule 12(b)(6), or alternatively, transferred pursuant to 28 U.S.C. § 1404(a). *See Wong*, 589 F.3d at 830 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

### C. The Forum Selection Clause Applies to the Claims Asserted in the Complaint

There is no question that Smucker seeks to enforce the parties' agreement, including the EOL Agreement and the ESI Standard Terms, and that its claims for breach of contract and warranty are based on rights that arise out of or relate to those agreements. Therefore, those claims are within the reach of the Eurofins forum selection clause. Further, the Eurofins forum selection clause readily applies to Plaintiff's tort claims as well.

"'Courts 'have consistently held that tort claims can be encompassed by a forum selection clause.'" *Ricketts v. hybris AG*, No. 1:15 CV 277, 2015 WL 13679481, at *3 (N.D. Ohio June 19, 2015) (quoting *Wireless Props., LLC v. Crown Castle Int'l Corp.*, No. 1:10-cv-269, 2011 WL

3420734, at *6 (E.D. Tenn. Aug. 4, 2011)).[7]  "Forum selection clauses should 'not be defeated by artful pleading of [non-contractual] claims.'"  *Id.* (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, LTD*, 709 F.2d 190, 203 (3d Cir. 1983)).  The "courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship' between the parties, . . . or if resolution of the claims relates to interpretation of the contract, . . . or if the tort claims involve the same operative facts as a parallel claim for breach of contract…."  *Id.* at *4 (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)) (internal citations and quotation marks omitted).

The Eurofins forum selection clause encompasses Plaintiff's tort claims because they "grow out of the contractual relationship . . . [and] ultimately depend on the existence of a contractual relationship between the parties."  *Id.*  (citation and internal quotation marks omitted) (alteration in original).  Specifically, Smucker's alleges that Eurofins negligently performed its testing duties when it purportedly applied a defective methodology and reported inaccurate results to Smucker, which allegedly triggered an unnecessary recall.  These allegations are founded on the premise that a commercial, contractual relationship existed between the parties.  And, the parties had a "settled expectation" that disputes involving their commercial relationship would be resolved in Iowa.  *Atl. Marine*, 134 S.Ct. at 583.  Accordingly, the parties' expectations should not be disrupted.

---

[7] *See also Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 725 (2d Cir. 2013) (holding agreement's forum selection clause applied to plaintiff's tort and breach of contract claims because it required "interpretation of the contracts at issue"); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (plaintiff filed only tort claims and court held agreement's forum selection clause applied to such claims because the "same exact facts surrounding [plaintiff's] tort claims would also give rise to a breach of contract claim"); *PolyOne Corp. v. Teknor Apex Co.*, No. 1:14CV0078, 2014 WL 4207671, at *5 (N.D. Ohio Aug. 25, 2014) (plaintiff filed only tort claims and court held plaintiff's tort claims fell within the forum selection clause's language).

### D.  The Eurofins Forum Selection Clause is Mandatory

Courts have found that the use of the term "shall," as opposed to discretionary terms like "may" or "should," when used in forum-selection clauses make the requirement of a certain forum mandatory, not permissive.  *See Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994). ("Because the clause states that "all" disputes "shall" be at [Defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory"); *Florida St. Bd. of Admin. v. Law Eng'g & Env. Serv., Inc.*, 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003) ("Generally, courts have found that use of the words 'may' and 'should' signify permissive clauses, while use of the words 'shall,' 'will,' or 'must' signify mandatory clauses").

The EOL Agreement's forum selection clause states, "Any action or proceeding . . . based on any right arising out of, this Agreement shall be brought exclusively in the courts of the State of Iowa, County of Polk or . . . the District Court for the Southern District of Iowa[.]"  Likewise, the October 2018 Eurofins Terms' forum selection clause incorporated therein: "the commercial courts of the State in which the registered office of the Member which accepted the order in question is located . . . which shall have exclusive jurisdiction."  In this case, it is undisputed that the "Member" that accepted the order at issue was Defendant Eurofins Scientific Inc., whose main office is in Des Moines, Iowa.  (Murray Decl. at ¶ 2 and Exhibit C thereto at ¶ 1.1, defining "Member" to include Eurofins Scientific Inc.; Complaint, Doc #: 1 at PageID #: 1 at ¶ 2 and Exhibit B thereto, Doc #: 1-3 at PageID #: 40, order identifying the "supplier" as Eurofins Scientific Inc.) These forum selection clauses thus both point to the federal and state courts located in and having jurisdiction over Polk County, Iowa and are mandatory.

**E. Based on the Forum Selection Clause, the Complaint Should be Dismissed Under the Doctrine of *Forum Non Conveniens*, or Alternatively, Transferred Pursuant to 28 U.S.C § 1404(a).**

Based on the foregoing, because the Eurofins forum selection clause is part of the parties' commercial contract that was fairly obtained, and because the forum selection clause is reasonable and just, it must be enforced.  In short, these commercial parties agreed, among other matters, that any litigation between them concerning Eurofins' testing services must be brought strictly in compliance with the mandatory Eurofins forum selection clause incorporated in their agreement, in the Polk County, Iowa courts.  Accordingly, Eurofins asks the Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) and/or the doctrine of *forum non conveniens*, or alternatively, to transfer it pursuant to 28 U.S.C. § 1404(a).

**IV.    CONCLUSION**

Defendant Eurofins Scientific, Inc. respectfully requests that the Court dismiss this action in its entirety, or in the alternative, transfer it to the United States District Court for the Southern District of Iowa, and that the Court grant such other or additional relief as the Court deems just and appropriate.

Respectfully submitted,

/s/Jessica L. MacKeigan
Richard T. Coyne (0042405)
Jessica L. MacKeigan (0087121)
WEGMAN HESSLER LPA
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826
 E-Mail: rtcoyne@wegmanlaw.com
 jlmackeigan@wegmanlaw.com

*Attorneys for Defendant Eurofins Scientific Inc.*

### **L.R. 7.1(f) Certification**

The undersigned certifies that the memorandum in support of Defendant's Motion to Dismiss or Transfer adheres to the page limitations set forth in Local Rule 7.1(f).

*/s/Jessica L. MacKeigan*